# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | JOHN W. DARRAH | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5500 | **DATE** | 11-26-01 |
| **CASE TITLE** | Samuel Puente, #N-23246 vs. Captain Malone, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the defendants' uncontested motions for summary judgment (docket numbers 26 and 28) are granted. The clerk is directed to enter judgment in favor of the remaining defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

(11) ■ **[See accompanying Memorandum Opinion and Order.]**

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

mjm | courtroom deputy's initials

number of notices

NOV 2 8 2001
date docketed

docketing deputy initials

date mailed notice

**Document Number**

Date/time received in central Clerk's Office | NOV 27 | mailing deputy initials

**DOCKETED**

NOV 2 8 2001

| | | |
|---|---|---|
| SAMUEL PUENTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **No. 00 C 5500** |
| v. | ) | |
| | ) | **U.S. District Judge** |
| CAPTAIN MALONE, et al., | ) | **John W. Darrah** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to 42

U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials and health care

providers, violated the plaintiff's constitutional rights by acting with deliberate indifference to

his serious medical needs. More specifically, the plaintiff alleges that the defendants failed to

make accommodations for him despite his bad knee, causing injury, and failed to treat his

condition despite "excruciating" pain and numerous requests for medical attention. This matter

is before the court for consideration of the defendants' motions for summary judgment. For the

reasons stated in this order, the defendants' unopposed motions will be granted.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470

U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the



evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992).

## FACTS

The plaintiff, a state prisoner, has been confined at the Stateville Correctional Center at all times relevant to this action. (Defendant Smith's Exhibit A, Deposition of Samuel Puente, p. 8.) The defendant Joseph Smith was a staff physician at Stateville from January 1995 until July 1999. (Defendant Smith's Exhibit B, Affidavit of Joseph Smith, ¶ 1.) Smith has been Stateville's medical director since July 1999. (*Id.*) Captain G. Malone is a correctional officer, assigned to Stateville's B-House in June 1999. (Complaint, pp. 6-7.) The defendant Barbara Miller was the administrator of the prison's health care unit in 1999 and 2000. (Complaint, p.2.) The defendant Jerome Springfield was the assistant warden at Stateville during the relevant time

period. (Complaint, p. 1.) [On September 29, 2000, the court on its own motion dismissed the complaint as to the defendants Welsh, Page, and Snyder pursuant to 28 U.S.C. § 1915(e)(2)(B).]

By Minute Order of October 22, 2001, the court explained the requirements for responding to a motion for summary judgment, as well as the consequences for failing to do so. The plaintiff has nevertheless failed to file any response refuting the defendants' accounts of the events underlying this action. Accordingly, the following facts, which are supported by the record, are deemed uncontested for purposes of this motion:

The plaintiff is sixty-six years old, six feet tall, and weighs approximately 265 pounds. (Defendants' Exhibit 5, Affidavit of Willard Elyea, ¶ 4.) Prior to his incarceration (in approximately 1981), the plaintiff had surgery on his left knee. (Plaintiff's dep., p. 24.) In May 1999, Stateville's former medical director (Elyea, not a defendant) issued the plaintiff a lower bunk permit due to the plaintiff's age, weight and request for such a permit. (Elyea affidavit, ¶¶ 4.) The plaintiff did **not** receive a lower gallery permit. (*Id.*; Defendant's Exhibit 6, Memorandum.)

On or about June 9, 1999, the plaintiff was placed in "B-House," on the fourth gallery, after being released from disciplinary segregation. (Complaint, pp. 6-7.) The defendant Malone reportedly denied the plaintiff's request for a cell on the first floor because "his workers" lived there. (*Id.*. p.7.)

In May or June 1999, the plaintiff tripped on the stairs, injuring his right knee. (*Id.*, p. 7 (the fall occurred on approximately June 12th); *but see* plaintiff's dep. at pp. 11-12 (the injury occurred in May).) A certified medical technician [hereinafter, "CMT"] referred the plaintiff to

3

the defendant Smith, who examined the plaintiff and ordered an injection of Betadine and Lidocaine to reduce pain. (Smith Affidavit, ¶ 3.) Smith also ordered x-rays, which were taken on June 19, 1999, and revealed a fractured knee cap. (*Id.*; Plaintiff's dep., pp. 12-13.) The plaintiff had reparative surgery on his knee several days later at St. Joseph Hospital in Joliet, Illinois. (*Id.*)

Upon his return from the hospital, the plaintiff was placed in the prison infirmary. (Smith Affidavit, ¶ 5.) Smith remained in the infirmary until August 18, 1999, a total of sixty-one days. (*Id.*). While housed at the infirmary, the plaintiff was evaluated several times each day by either a CMT, nurse or Dr. Smith. (*Id.*, ¶ 7.) A nurse is on duty in the infirmary twenty-four hours a day to address any medical needs or inmate complaints. (*Id.*) Throughout his stay in the infirmary, the plaintiff was prescribed medication and seen by a physical therapist several times each week. (*Id.*, ¶ 8.)

Upon the plaintiff's discharge from the infirmary, he was placed in the general population, where he continued to receive pain medication and to see a physical therapist. (*Id.*, ¶ 9.) The plaintiff was no longer under Smith's care while in the general population; rather, he was now the charge of Dr. Duffy (not a defendant), Stateville's orthopedic specialist. (*Id.*, ¶ 12.) Inmates living in the general population can obtain over-the-counter pain medication from CMTs without a doctor's order or prescription. (Smith affidavit, ¶ 11.) CMTs make rounds in the cell houses every day. (*Id.*, ¶ 12.) Inmates may request evaluation by a CMT at any time. (*Id.*) The CMT notifies a staff physician if the inmate needs further medical care. (*Id.*)

4

By the time the plaintiff was released from the infirmary, his knee was already starting to feel better. (Plaintiff's dep., p. 16.) The plaintiff had no complaints of pain. (Progress Notes; Plaintiff's dep., pp. 16, 44.) The only problems he was experiencing was that his knee was still numb and sometimes gave out. (*Id.*) The plaintiff never took any pain medication once he left the infirmary. (*Id.*, p. 34.) The plaintiff asked a CMT for medication only once. (*Id.*)

When the plaintiff was discharged from the infirmary, Smith issued a discharge order dictating that the plaintiff was to continue receiving physical therapy and certain medications. (Plaintiff's dep., pp. 15-16; Progress Notes; Smith Affidavit, ¶ 9.) The plaintiff received twenty physical therapy sessions at Stateville from August 18, 1999, through November 16, 1999. (Plaintiff's dep., p. 32; Progress Notes; Smith Affidavit, ¶ 9.) During those twenty physical therapy sessions, the plaintiff never once complained of pain. (Defendant Smith's Exhibit C, Plaintiff's Medical Progress Notes; Plaintiff's dep., p. 44..)

On October 19, 2001, the plaintiff filed a grievance concerning dissatisfaction with his medical care and the defendant Malone's refusal to place him on a lower gallery. (Deposition Exhibit B.) The plaintiff attached a note to the grievance requesting a knee brace because, he complained, his knee sometimes buckled. (Deposition Exhibit C.) The grievance was forwarded to the Health Care Unit (Deposition Exhibit B), then on to Smith. (Smith affidavit, ¶ 13.) Although Smith was no longer responsible for the plaintiff's medical care once he left the infirmary, he wrote Springborn a memo on November 8, 1999, informing the warden that he had treated the plaintiff earlier and that he was aware the plaintiff was scheduled to see an orthopedic specialist in another week. (*Id.*, ¶ ¶ 10, 13; Smith's Exhibit H, Memorandum.) Smith

additionally indicated that he was referring the plaintiff to a dietician so that the plaintiff might lose weight and possibly reduce stress on his knees. (*Id.*, ¶ 13.) Smith also noted that the plaintiff had been issued a low bunk/low gallery permit on October 20, 1999. (Defendants' Exhibit 7, Memorandum; Plaintiff's dep., p. 27.)

On November 16, 1999, the plaintiff was examined by Dr. Duffy (not a defendant), Stateville's orthopedic specialist. Duffy recommended that the plaintiff's physical therapy be discontinued. (*Id.*, ¶ 14.) Duffy further concluded that no knee brace was necessary and that no further medical care was recommended. (*Id.*) Smith reviewed and approved Duffy's recommendations. By that time, the plaintiff had a satisfactory range of motion in his knee and suffered only occasional numbness in the knee area. (Plaintiff's dep., p. 16; Defendant Smith's Exhibit D, Duffy Consultation Report.) Duffy warned the plaintiff that numbness around the incision site is normal for approximately one year following surgery. (Plaintiff's dep., pp. 30-31; Duffy consultation report.) The plaintiff's only residual problem since the June 1999 surgery is that "it gives out once in a while." (*Id.*, p. 44.)

The plaintiff has never written to or spoken with either Health Care Unit Administrator Barbara Miller (Plaintiff's dep., p. 44) or Assistant Warden Springborn about his knee. (Defendants' Exhibit 2, Affidavit of Jerome Springborn, ¶ 5.) Springborn has no medical license and relies on the medical unit to provide inmates with health care. (*Id.*, ¶ 4.) Springborn's only personal involvement was to forward on the plaintiff's grievance to the health care unit for a response. (*Id.*, ¶ 5.) As an administrator, Miller likewise has no role in providing direct medical treatment to inmates, leaving such care to doctors and the on-site health care staff. (Defendants'

Exhibit 3, Affidavit of Barbara Miller, ¶ 3.) The plaintiff never saw Dr. Smith again once he was housed in the general population. (Plaintiff's dep., p. 33; Smith affidavit, ¶ 10.) The plaintiff never filed a grievance against Smith, Miller, or Springborn regarding anything they did or failed to do. (Plaintiff's dep., p. 21; Defendants' Exhibit 21, Affidavit of Sandra Kirby-Brown, ¶ 7.)

## DISCUSSION

The plaintiff has failed to establish that there is a genuine, triable issue as to any of the facts set forth by the defendants, and the court finds that the defendants are entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to his serious medical needs. The evidence does not support an inference that the plaintiff had any "serious" medical condition either before he injured his knee or after he was released from the infirmary following surgery. Regardless, even assuming *arguendo* that the plaintiff's condition was serious, the quality of his medical treatment was not so deficient as to amount to a denial of essential medical care. Furthermore, the named defendants lacked personal involvement in the plaintiff's post-infirmary medical treatment.

In order for a prison inmate to prevail under 42 U.S.C. § 1983 on a claim of medical mistreatment, he must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The standard of deliberate indifference has been repeatedly reaffirmed, as in *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[S]ociety does not expect that prisoners will have unqualified access to health care"); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). The indifference to medical needs

must be substantial; inadequate treatment due to negligence, inadvertence or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations. *Estelle; Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991) (if the claim is merely medical malpractice, it should be brought in state court). Deliberate indifference may be demonstrated by actual intent or by reckless disregard. *See Miltier v. Bourn*, 896 F.2d 848, 851 (7th Cir. 1990).

Here, the defendants have demonstrated that they were not deliberately indifferent to any serious medical need; their brief is supported by affidavits and the plaintiff's voluminous medical records. Once the moving party has shouldered his or her burden under Fed. R. Civ. P. 56, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. In this case, the plaintiff has failed to come forth with evidence to create a triable issue of fact that the defendants exposed him to undue risk or denied him needed care.

The court is unpersuaded that the plaintiff had a "serious" medical condition, either at the time he fell down the stairs or following his release from the infirmary.[1] Under the Seventh Circuit's standard,

> A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

---

[1] The plaintiff has no complaints about the surgery itself or for the care he received while in the infirmary. (Plaintiff's dep., pp. 16-20.) The plaintiff reiterated at his deposition that he is suing only over the quality of his care after he was released from the infirmary, until his final visit with the orthopedic specialist on November 16, 1999. (Plaintiff's dep., p. 33.).

recognize the necessity for a doctor's attention.... [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

See *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

Plainly, the complaint misstates an important fact: the plaintiff had no low-gallery permit in May or June of 1999. The defendant Malone denied the plaintiff placement on a lower gallery reportedly because his "workers" lived on that gallery, but also because the plaintiff had no medical permit for such placement. It cannot reasonably be argued that Malone should have based a cell assignment on the plaintiff's mere say-so. If the plaintiff felt that his bad knees necessitated that he avoid stairs, then he should have gone to the health care unit and requested a lower gallery permit. In fact, when the plaintiff later requested such a permit, one was issued. Nothing in the record suggests that the plaintiff had an obvious need for a lower gallery permit. The defendant Malone cannot be held liable for the plaintiff's fall on the stairs simply because he failed to place the plaintiff on a lower gallery on demand, without any proof of a medical need for such placement.

Nor does the record support a finding that the plaintiff's recovering knee amounted to a "serious" medical need two months after the surgery. The medical records all indicate that the surgery went well and that the healing process progressed well. In fact, the plaintiff admits that by the time he left the infirmary, his only symptom was some numbness. The plaintiff admitted at his deposition that he suffered no pain nor any other medical complication. The plaintiff has adduced no medical evidence whatsoever to support his contention that he had a serious medical

9

condition. There is simply no basis for a finding that the plaintiff's knee injury, at least by the time he left the infirmary, was of the gravity contemplated by *Estelle*.

Even assuming (without finding) that the plaintiff did have a condition that can be deemed serious enough to implicate constitutional concerns, the record does not support a finding that the defendants acted with deliberate indifference to the plaintiff's needs. Again, the plaintiff's early representations completely conflict with the evidence in the record. In his complaint, the plaintiff charged that the defendants' ignored his pleas for help despite the fact that he was in "excruciating pain," but at his deposition, the plaintiff admitted both that he was merely numb and that he received medication and physical therapy.

While it is unfortunate that the plaintiff's knee sometimes still buckles, the defendants' failure to completely remedy the plaintiff's knee problems, despite their best efforts, did not violate the Constitution. An inability to effect a final cure does not amount to deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997). As noted above, the Eighth Amendment is not a vehicle for bringing claims for medical malpractice. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Regrettably, there is no current cure for arthritis, which is a common consequence of injuries like the plaintiff's. *See* Plaintiff's dep., pp. 35-36. The plaintiff can only maintain a healthy weight, exercise, and take aspirin as needed.

It is unclear what more the plaintiff wanted medical staff to do, but the question of whether a certain diagnostic technique or form of treatment should be prescribed "is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). A

prisoner does not have a right to a particular type of medical treatment. *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). A plaintiff can show that the professional disregarded a serious medical need "only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). Evidence that some medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim. *Id., relying on Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). A disagreement about which of many professionally acceptable treatment plans should have been implemented might state a cause of action for negligence, but is not actionable under the Constitution. *Id.*

The defendants have shown that they provided the plaintiff with ample treatment, including surgery, medication to combat the pain, and rehabilitational therapy. The defendants' affidavits are supported by the plaintiff's medical records taken in the normal course of business by numerous medical staffers, the defendants and non-defendants alike. The plaintiff has been provided with medical care on demand, including immediate consultation to a physician when he reported his knee injury to the CMT, immediate referral to an outside hospital for corrective surgery, sixty-one days of around-the-clock care in the infirmary following surgery, and continued medication and physical therapy once the plaintiff returned to the general population. Lacking medical expertise, neither the court nor the plaintiff can second-guess the judgment of medical professionals that the plaintiff's medical care was appropriate. Even viewing the record

in the light most favorable to the plaintiff, no reasonable person could find that the defendants acted with deliberate indifference to a serious medical need.

Finally, the named defendants cannot be held liable for any purported problems the plaintiff was having with receiving medical attention following his release from the prison infirmary because they lacked direct, personal involvement, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor has the plaintiff shown that the alleged denial of medical care occurred at the defendants' direction or with their knowledge and consent. *Id.* "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted). The doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

Neither the defendant Springborn nor the defendant Miller had any communication with the plaintiff concerning his dissatisfaction with the quality of his medical care, and neither individual is personally involved in the provision of medical treatment to inmates. The defendant Smith likewise played no role in the plaintiff's medical care after he left the infirmary; once in general population, the plaintiff was required to voice any concerns to the CMTs who made daily rounds. Smith cannot be held liable for any errors or admissions about which he was unaware. Although Malone denied the plaintiff a lower gallery cell until the plaintiff had a medical permit, there is no allegation that the defendant Malone denied or delayed access to

needed medical care. There is no genuine dispute that none of the defendants personally acted with deliberate indifference to the plaintiff's serious medical needs.

In sum, for the reasons set forth *supra*, the court finds that the defendants are entitled to judgment as a matter of law. Although the plaintiff made certain allegations in his complaint, the record does not support those allegations. The plaintiff has failed to raise a triable issue of fact as to whether the defendants acted with deliberate indifference to his serious medical needs; in fact, he has declined even to respond to the defendants' motions. Because the plaintiff has failed to submit any evidence to support his assertions that the care he received for his fractured knee was constitutionally deficient, the defendants' uncontested motions for summary judgment will be granted.

If the plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C); *Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999). If the plaintiff does choose to appeal, he will be liable for the $105 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also be assessed a "strike" for purposes of 28 U.S.C. § 1915(g). Three "strikes" would prevent the plaintiff from bringing future suits *in forma pauperis* absent a showing of imminent danger of serious physical injury.

13

IT IS THEREFORE ORDERED that the defendants' unopposed motions for summary judgment (docket numbers 26 and 28) are granted. The Clerk is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.

ENTER:

Dated: November 26 , 2001

JOHN W. DARRAH
United States District Judge